**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Zay Yan Min Htet,

Petitioner,

v.

J. Johnson et al.,

Respondents.

Case No. 5:26-cv-04885-AYP

**ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS**

## I. SUMMARY

Petitioner, Zay Yan Min Htet, is a noncitizen from Myanmar (Burma). (Dkt. No. 1 ("Petition").) He first came to this country on a temporary visa on August 21, 2019, and subsequently applied for asylum. The government permitted Petitioner to remain at liberty and issued him a Social Security number, work permit, and allowed him to remain at liberty while he pursues his asylum case.

Approximately seven years after arriving in the United States and six years after filing his application for asylum, he was arrested at an asylum interview on July 9, 2026.

In this habeas action, Petitioner argues that his ongoing detention violates both Due Process and the Immigration and Nationality Act ("INA") regulations. Respondents argue he has not exhausted his administrative remedies, his detention is lawful under 8 U.S.C. § 1226(a), and the District Court is precluded from reviewing bond determination by an Immigration Judge ("IJ"). For the reasons that follow, the Court concludes that Petitioner's sudden detention—without notice, an opportunity to be heard—violates due process. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner, Zay Yan Min Htet, (A#218-050-681) is a twenty-six-year-old noncitizen from Myanmar (Burma). (Dkt. No. 1 at 2 ("Petition").) He lawfully entered the United States on a tourist visa on August 21, 2019, via the San Francisco International Airport. *Id.* He has remained in the country since then. *Id.* Within one year of his arrival, Petitioner filed an I-589 (Application for Asylum) with United States Citizenship and Immigration Services ("USCIS"). *Id.* Thereafter, Petitioner was issued a Social Security number, work permit, and started working and providing for his wife and twin brother and contributing to society in California. *Id.* at 17. He notes that ICE made no effort to detain him when he was granted work permit and his asylum application has been pending. *Id.* at 3. He has no criminal convictions. His only arrest from March 17, 2026, for robbery was rejected by the District Attorney on April 8, 2026. (Pet. at 3, 24.)

Approximately seven years after arriving and six years after filing his

application for asylum, he presented for an asylum interview at Tustin Immigration Office on July 9, 2026. *Id.* at 2. However, instead of attending his interview, he was arrested at the interview without notice, warrant or opportunity to contest his detention. *Id.* Respondents dispute this and include an I-213 form which states that ICE "arrested HTET at USCIS-FDNS and served him with DHS Form I-200," an administrative arrest warrant. (Dkt. No. 12-1 at 4.) Petitioner was eventually provided with a Notice to Appear ("NTA"). (Pet.)

While in detention, Petitioner had a bond hearing on July 27, 2026, where the Immigration Judge ("IJ") denied his bond due to his criminal charge that had been rejected by the DA. (Pet. at 3.) Petitioner did not appeal the decision due to the harm likely to result from the lengthy appeal process and the futility of appealing the actions of an IJ to the Board of Immigration Appeals ("BIA"). *Id.*

Petitioner filed the instant petition on August 24, 2026. (Pet.) He alleges he has a liberty interest arising from the governments decision not to detain him when it processed his asylum application, took his biometrics, and granted him a Social Security number and work permit. (Pet. at 3, 17.) He argues the government violated both substantive and procedural due process and the INA regulations by detaining him without notice, warrant, and an opportunity to be heard. (Pet. at 7–14.) Petitioner requests that the Court order his immediate release. *Id.* at 18.

On August 27, 2026, Respondents filed their Answer. (Dkt. No. 12 ("Answer").) Respondents argue: (1) Petitioner was not previously released from ICE custody on an order of supervision and thus does not have a liberty interest warranting release from custody; (2) Petitioner failed to exhaust his administrative remedies for his custody hearing; and (3) the District Court is

precluded from reweighing evidence considered by the IJ. *Id.* at 2–6.

On October 9, 2026, Petitioner filed his Reply. (Dkt. No. 22 (Reply").) Petitioner states again that when he overstayed his visa and then applied for asylum, the government did not arrest and detain him at that point. *Id.* In fact, the government granted him a work permit. (Reply at 2.) Petitioner further argues that the government did not meaningfully contest his argument that he has a liberty interest nor do they assert any government interest that should be weighed in favor of the government in a *Matthews* factor analysis. *Id.* Petitioner argues he has a protected liberty interest because the government knew he had overstayed his visa but did not arrest him for about six years after his visa expired. *Id.* The government granted him a work permit, creating a reasonable expectation that Petitioner was permitted to remain at liberty to continue working. *Id.* Finally, Petitioner argues that exhaustion would be futile because it could not cure and would only exacerbate the harm caused by the unconstitutional arrest and detention. *Id.*

## III. LEGAL STANDARD

Under 28 U.S.C. § 2241, federal courts have jurisdiction to review challenges to the legality of immigration detention and may grant a writ of habeas corpus to a person who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). A petitioner bears the burden of proving "that he is being held contrary to law" and "must satisfy his burden of proof by a preponderance of the evidence." *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (quoting *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025)).

## IV. DISCUSSION

The Court begins by addressing Respondents' arguments that the Petition should be denied on exhaustion, before turning to the merits of Petitioner's habeas claims.

### A. Waiver of exhaustion is appropriate

As a preliminary matter, the Court addresses exhaustion. Respondents argue that the Court should decline to address Petitioner's claims because he has not fully exhausted administrative remedies by appealing his bond denial to the BIA and Petitioner did not present a valid argument excusing exhaustion. (Ans. at 3–4.)

While administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241, courts typically "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal

quotations and citations omitted).

Petitioner argues that exhaustion should not be required because the "exhaustion would be futile because it could not cure and would only exacerbate the harm caused by the unconstitutional arrest and detention." (Reply at 8.) Petitioner also argues that exhaustion should be excused because "the questions before the Court are pure questions of federal constitutional law." *Id.*

The Court finds that Petitioner has shown a waiver of exhaustion is warranted. The Petition does not raise a challenge to the IJ's bond determination, which would be the subject of his BIA appeal. Instead, he raises legal and constitutional challenges to his arrest and detention that would not be before the BIA and, in any event, the BIA could not consider because it "does not have jurisdiction to determine the constitutionality of the statutes it administers." *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006); *see In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer.").

Petitioner would also suffer significant irreparable harm if forced to wait for the BIA to render a decision on his appeal. Although it is difficult to predict with certainty, Petitioner's pending appeal is likely to take substantial time. "In 2024, EOIR data showed an average processing time of 204 days for bond appeals." *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). The delays have likely only increased in recent years. As the Department of Justice recently reported, "between fiscal year 2015 and the end of fiscal year 2025, the Board's pending case load increased more than five-fold—from 37,285 pending appeals to 202,946 pending appeals." Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270

(Feb. 6, 2026). During this time, the BIA has been unable to "keep up with incoming filings while tackling the backlog in any meaningful way." *Id*. While DOJ is implementing new reforms to "streamline" BIA review and reduce this backlog, these efforts will likely take time—particularly because DOJ recently reduced the BIA's membership from 28 to 15 members. *Id*.

Accordingly, the Court waives the prudential exhaustion requirement.

**B. Petitioner's detention violates procedural due process**

Petitioner claims that he is entitled to immediate release from custody because, he was deprived of his liberty without adequate due process. (Pet. at 7–14.) The Court finds that Petitioner's ongoing detention violates procedural due process.

**1. Procedural due process**

Petitioner's family and community ties, the government's decision not to detain him at any point since he applied for asylum, and the government's grant of a work authorization "has given rise to a protected liberty interest in remaining out of immigration custody that can only be taken away only if the government's procedure for doing so accords with due process." *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 2654723, at *2 (N.D. Cal. Sept. 8, 2026); *see, e.g., Suarez v. Warden, California City Detention Facility*, No. 1:26-CV-05989-TLN-SCR, 2026 WL 2455252, at *2 (E.D. Cal. Aug. 21, 2026) ("Petitioner has a protected liberty interest in remaining free from custody based on his significant community ties and the government's decision not to detain him in or around February 2025, after he applied for asylum but had already overstayed his visa"); *Ke v. Janec[k]a*, No. 5:26-CV-04360-DTB, 2026 WL 2508150, at *3 (C.D. Cal. Aug. 25, 2026) ("Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision

not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief" and collecting cases).

The Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030-36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances). Courts have previously found that, under the *Mathews v. Eldridge* framework, noncitizens in circumstances comparable to Petitioner were entitled to release because their re-detention without a hearing or a material change in circumstances violated due process. *See, e.g., Sun v. Warden of Adelanto ICE Processing Center*, *et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026).

Courts have extended these principles to cases in which a noncitizen had not been released from immigration custody previously, but where the record indicates that the Government "deliberate[ly] acquiesce[d]" in the noncitizen's remaining at liberty in the United States. *See Doria v. Albarran, et al.,* No. 26-cv-13374-JSC, 2026 WL 3459944, at *3 (N.D. Cal. Nov. 13, 2026.) (finding the government "vested in Petitioner a liberty interest in his continued freedom" because it made a decision not to detain him); *Jemna v. Mullin,* No. 3:26-CV-02396-RBM-VET, 2026 WL 2936600, at *5 (S.D. Cal. Sept. 29, 2026) (finding the government's decision not to detain Petitioner while his asylum application was pending created a liberty interest and his detention without notice or an opportunity to be heard thereby violated his due process rights); *Martinez v. Acting Warden of the Adelanto Detention*

*Center*, No. 5:26-cv-02635-ACCV, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (holding that a visa overstayer with a pending asylum application "possesses a constitutionally protected liberty interest that the Government cannot extinguish without affording pre-deprivation process"); *Kharitonova*, 2026 WL 531441, at *2 (concluding that noncitizen who overstayed nonimmigrant visa and entered removal proceedings, but was never detained, had a protected liberty interest in remaining free).

This case is analogous. Although the government did not detain and then release Petitioner, it did make a decision not to detain him. Petitioner became subject to detention under 8 U.S.C. § 1226(a) after his B-2 visa expired, but the Government elected not to detain him and instead granted him a Social Security number and employment authorization while his asylum case remains pending. (Pet. at 2.) The government vested in Petitioner a liberty interest in his continued freedom when it granted his employment authorization. For the past several years, Petitioner has proceeded with his asylum claims, worked to support his wife and twin brother, has had no convictions, and has been deepening his ties in the community. Throughout this time period, the Government knew exactly where Petitioner was but permitted him to remain at liberty.

To determine what procedures are constitutionally sufficient to protect Petitioner's liberty interest, the Court applies the three-part test established in *Matthews v. Eldridge.* "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). In determining what process is due, courts balance; (1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any

additional or substitute procedural safeguards; and (3) the government's interest. 424 U.S. 319, 335 (1976). Each of these factors weighs in Petitioner's favor.

Under these circumstances, the Court finds that Petitioner's detention without a pre-deprivation hearing or a material change in circumstances violates due process.

**a) Private Interest**

Petitioner has a substantial private interest in remaining out of custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Before his detention, Petitioner had lived at liberty in the United States for approximately seven (7) years, since 2019 when his B-2 visa expired. (Pet. at 2.) During that time, he obtained a Social Security number and work permit, worked to support his wife and twin brother, paid taxes and continued to pursue his asylum claim. He has lived at a California address known by DHS and ICE. (Pet. at 2.)

Petitioner has remained known to the governments during this time despite being subject to detention under 8 U.S.C. § 1226(a). Petitioner had been through the biometrics process with ICE five years earlier and received a notice for July 9, 2026, Notice of action for asylum interview. (Pet. At 17.) "[A] person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a

protected interest in their liberty.") (collecting cases). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). As the Supreme Court recognized in *Morrissey*, even conditional liberty "includes many of the core values of unqualified liberty," permitting an individual to work, remain with family and friends, and "form the other enduring attachments of normal life." 408 U.S. 471, 482 (1972).

Petitioner's detention abruptly deprived him of those interests after years during which the Government knowingly permitted him to remain at liberty while processing his immigration applications. The private interest is particularly weighty because Petitioner's detention interrupted a longstanding status quo that the Government itself had affirmatively maintained through years of processing Petitioner's affirmative asylum application and related benefits. This factor therefore weighs heavily in Petitioner's favor.

**b) Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the procedures employed created a substantial risk of erroneous deprivation. The second *Mathews* factor considers both "the risk of an erroneous deprivation" under the procedures employed and "the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Where the Government detains a noncitizen after years of government-authorized liberty without first providing notice or an opportunity to be heard before a neutral decisionmaker, courts have consistently concluded that the risk of erroneous deprivation is high and that a pre-deprivation hearing would significantly reduce that risk. *See Kharitonova*, 2026 WL 531441, at *3; E.E.O.H., 2026 WL

850363, at *5; *Kalkan v. Chestnut*, No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026), *appeal dismissed,* No. 26-3277, 2026 WL 2446315 (9th Cir. June 18, 2026). As the Court in the Eastern District of California recently explained, "[t]he risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high." *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *4 (E.D. Cal. June 25, 2026).

That reasoning applies with equal force here. Respondents detained Petitioner without first providing notice of the proposed detention, disclosing the basis for concluding that detention had become necessary, or affording him an opportunity to contest that determination before a neutral decisionmaker. (Pet. at 3.) Respondents identify no evidence that, before taking Petitioner into custody, they made an individualized determination that detention was warranted, including an assessment of whether Petitioner posed a danger to the community or a risk of flight. *Id*. Instead, after accepting Petitioner's asylum application for processing, completing biometric processes, issuing employment authorization, and permitting him to remain at liberty while his application remained pending, Respondents detained Petitioner at his asylum interview, without first making an individualized determination that detention was necessary. (Pet. at 17.) Under these circumstances, a pre-deprivation hearing would have substantially reduced the risk of erroneous detention by permitting a neutral decisionmaker to determine whether any individualized factual basis justified depriving Petitioner of the liberty the Government had long permitted him to retain. *See Mathews*, 424 U.S. at 335.

Based on the record, there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary re-detention.

**c) Government Interest**

As to the third *Mathews* factor, the Government's interest does not outweigh the need for additional procedural safeguards. Although the Government has legitimate interests in enforcing the immigration laws, protecting the public, and ensuring that noncitizens appear for immigration proceedings, those interests do not justify detaining Petitioner without first providing notice and constitutionally adequate pre-deprivation process. *See Mendez Tzoc v. LaRose*, No. 26-CV-3965-GPC-VET, 2026 WL 2227161, at *4 (S.D. Cal. Aug. 3, 2026). Several courts considering whether due process requires a pre-deprivation hearing before immigration detention have concluded that the Government's interest in dispensing with those procedures is slight. In *J.E.H.G. v. Chesnut*, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *12 (E.D. Cal. Dec. 9, 2025), the court held that "the government's interest in detaining Petitioner without proper process is slight." Likewise, in *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1040 (N.D. Cal. 2025), the court concluded that there was "no countervailing government interest" in providing a hearing only after detention rather than beforehand. Similarly, in *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1135 (E.D. Cal. 2025), the court concluded that the Government's interest in dispensing with a pre-deprivation hearing was low because the cost of a custody hearing was "minimal." Finally, in *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019), the court explained that although the Government retains authority to take a noncitizen into custody, "its interest in doing so without a hearing is low."

Again, Respondents identify no circumstance requiring Petitioner's

immediate detention before a neutral decisionmaker could determine whether detention was warranted, including whether he posed a danger to the community or a risk of flight. To the contrary, Respondents detained Petitioner at an interview for his asylum application, after years of permitting him to remain at liberty while affirmatively administering his pending asylum application, requiring him to submit biometrics, and issuing him a work authorization. Under these circumstances, providing constitutionally adequate pre-deprivation process would have imposed little additional burden while substantially reducing the risk of an erroneous deprivation of liberty.

Balancing the *Mathews* factors, the Court concludes that due process required Respondents to provide Petitioner with notice and an opportunity to be heard *before* depriving him of his liberty. Petitioner had a substantial liberty interest in remaining free from physical detention after years of government-authorized liberty; the procedures employed created a significant risk of erroneous deprivation; and Respondents have identified no governmental interest sufficient to justify dispensing with pre-deprivation process. For those reasons, the Court concludes that Respondents violated Petitioner's procedural due process rights under the Fifth Amendment by detaining him without constitutionally adequate pre-deprivation process.

Respondents' post-deprivation bond hearing does not alter that conclusion. As the Supreme Court has explained, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Although a prompt post-deprivation remedy may satisfy due process where "the necessity of quick action by the State" or "the impracticality of providing any predeprivation process" renders prior process infeasible, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)),

Respondents identify no such circumstances here. Because pre-deprivation process was both feasible and constitutionally required, Respondents post-deprivation bond hearing does not cure the constitutional violation. *See Zinermon*, 494 U.S. at 127-30, 136-39. Accordingly, the Court GRANTS the petition for writ of habeas corpus and orders Petitioner's immediate release from DHS custody.

**2. Remedy**

Despite asserting that Petitioner "has not established a lack of due process available to him," (Ans. at 3), Respondents do not meaningfully address what due process requires. Instead, Respondents only argue that Petitioner's post-deprivation bond hearing "forecloses his Due Process claims because it significantly reduces any risk of erroneous deprivation under the *Matthews v. Eldridge* three-part test." *Id.*

However, most courts to address the issue have "concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Orellana-Rivera v. J. Johnson*, 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026) (observing that an "increasing wave of district courts have concluded, a post-hoc bond hearing" is insufficient to remedy the denial of a petitioner's right to pre-deprivation process and ordering the petitioner's release).

These decisions reason that a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Khalsa v. Janecka, et al.*, No. 5:26-cv-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026) (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash.

2025)). *See also Mendoza v. Adelanto ICE Processing Center Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless"); *Hector Jose Martinez Lopez v. Dep't of Homeland Sec. et al.*, No. 25-cv-03607-KK-ADS, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation of liberty, along with the concomitant damage to his mental health and impact on his family, has already taken place") (citation modified).

"[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (citation modified). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (citation modified). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.'" *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)); *Chowdhury v. Lyons*, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). This principle has particular force where, as here, the protections at issue are

intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Moreover, Petitioner was likely prejudiced by being forced to litigate the legality of his confinement from inside a detention center over the past three months. As numerous courts have recognized, detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing. *See generally Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005) (discussing the difficulty of obtaining legal representation for an "incarcerated immigrant"); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 778 (N.D. Cal. 2019) (discussing the "substantial challenges" faced by a noncitizen attempting to litigate a removal case while detained.

Accordingly, the Court finds that Petitioner is entitled to release due to Respondents' violation of his due process rights.

**V.CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus.

1. Respondents must IMMEDIATELY RELEASE Petitioner Zay Yan Min Htet (A#218-050-681) from custody and return him under the same conditions he was subject to before his detention on July 9, 2026. At the time of release, Respondents must return all of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

Respondents shall file a "Notice of Release" within three (3) days of the entry of this Order. The Notice shall include confirmation of the return of the above-named belongings and of Petitioner's release.

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner, absent strict compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate flight risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

Dated: November 23, 2026

HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE